**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

JOHN L. MILLS, #198973, )
aka John Lewis Mills, )
 ) CIVIL ACTION NO. 9:14-1675-TMC-BM
 Petitioner, )
 )
v. ) **REPORT AND RECOMMENDATION**
 )
WARDEN, LIEBER CORR. INST., )
 )
 Respondent. )
_____)

   Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on April 25, 2014.[1]

   The Respondent filed a return and motion for summary judgment on November 10, 2014. As the Petitioner is proceeding pro se, a Roseboro order was filed on November 12, 2014, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving extensions of time to respond, Petitioner filed a response in opposition on February 2, 2014. Respondent then filed a reply brief on February 12, 2015, and Petitioner filed a sur reply on March 26, 2014.

   This matter is now before the Court for disposition.[2]

---

   [1]Filing date under Houston v. Lack, 487 U.S. 266 (1988).

   [2]This case was automatically referred to the undersigned United States Magistrate Judge for
                 (continued...)



## Procedural History

Petitioner was indicted in Greenville County in June 2005 for murder [Indictment No. 05-GS-23-004646]. (R.pp. 1080-1081). Petitioner was represented by Patrick L. Mangrum, Esquire. After a jury trial on January 12-19, 2007, Petitioner was found guilty as charged, and was sentenced to life imprisonment. (R.pp. 871, 882).

Petitioner filed a timely appeal on which he was represented by Deputy Chief Appellate Defender Robert M. Dudek, who raised the following issues:

> **Ground One:** Whether the court erred by charging the "hand of one is the hand of all" since appellant was not indicted under that theory, and the indictment clearly alleged appellant killed the decedent by shooting him with a firearm with malice aforethought since appellant was indicted as the sole participant in the murder, and there was not any indictment allegation he was acting in concert with someone else?

> **Ground Two:** Whether the court erred by instructing the jury on the "hand of one is the hand of all" over defense counsel's objection that the evidence presented at trial did not warrant that instruction?

See (R.p. 916).

However, by letter dated January 28, 2009, appellate counsel notified the South Carolina Court of Appeals that Petitioner wished to drop the appeal together with an affidavit from the Petitioner. See Court Docket No. 30-5. Thereafter, by Order dated January 29, 2009, the South Carolina Court of Appeals dismissed the appeal and sent the Remittitur to the Greenville County Clerk of Court. See Court Docket No. 30-6.

On July 14, 2009, Petitioner filed an application for post-conviction relief ("APCR")

---

[2](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



in state circuit court. See Mills v. State of South Carolina, No. 2009-CP-23-5809. (R.pp. 942- 947).

The APCR raised the following issues:

> Ineffective Assistance of Counsel for failing to investigate, failing to have a trial strategy, failing to cross-examine prosecution witnesses, and failing to retain an expert witness.

(R.pp. 943-944, 962).

Petitioner was represented in his APCR by Scott Robinson, Esquire, and an evidentiary hearing was held on Petitioner's application on November 17, 2010. (R.pp. 954-1068). In an order dated February 22, 2011, the PCR judge denied relief on the APCR in its entirety. (R.pp. 1069-1079).

Petitioner filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Wanda H. Carter, Esquire, who raised the following issue:

> Trial counsel erred in failing to investigate into and present expert testimony to challenge the state's ballistics, medical, and trace evidence reports because had counsel properly attacked this evidence, then petitioner would have been able to establish insufficient evidence of guilty on the murder charge, especially since the state alleged that petitioner fired a gunshot from the front passenger side of the vehicle where the deceased sat, but the bullet entered through the deceased's left arm, and where the alleged bullet that caused this death was nonexistent.

See Petition, p. 2 (Court Docket No. 30-7, p. 3).

On January 21, 2014, the South Carolina Court of Appeals denied the petition. See Court Docket No. 30-9. The Remittitur was sent down on February 11, 2014. See Court Docket No. 30-10.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

> **Ground One:** Ineffective Assistance of Counsel/Trial Counsel failed to investigate into the medical and forensic evidence, and was therefore unable to properly present the expert evidence that would have clearly established insufficient evidence of guilt on Petitioner's behalf.



3

**Ground Two:** Trial counsel failed to investigate the ballistics evidence in Petitioner's murder case. Had counsel do so, he could have easily proven that the "bullet" that was used by the state to convict Petitioner was actually non-existent.

**Ground Three:** The prosecutor used false, coerced, perjured statements, evidence (gun specifically), and testimonies to convict the Petitioner of murder.

**Ground Four:** Due Process of the law was denied to the Petitioner from the very beginning of the murder case all the way through the prosecution.

See Petition Supplement[3] [Court Docket No. 1-3].

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

In his response in opposition to summary judgment, Petitioner included numerous documents which were not submitted to the PCR court. Respondent objects to the Court's

---

[3]Petitioner did not list his Grounds in his original petition. Rather, he noted that he would file a supplement to outline the claims that he was pursuing.



consideration of these documents, and after careful review of this matter, the undersigned finds that

Petitioner has not shown any reason why this material and information could not have been obtained

and presented to the PCR court as part of his state court PCR action.  As such, Supreme Court

precedent militates against consideration of these exhibits.

> Although state prisoners may sometimes submit new evidence in federal court,
> AEDPA's statutory scheme is designed to strongly discourage them from doing so.
> Provisions like §§ 2254(d)(1) and (e)(2) ensure that "[f]ederal courts sitting in habeas
> are not an alternative forum for trying facts and issues which a prisoner made
> insufficient effort to pursue in state proceedings." Id., at 437; see also [Harrington v.]
> Richter, 562 U.S. [86, 103 (2011)]("Section 2254(d) is part of the basic structure of
> federal habeas jurisdiction, designed to confirm that state courts are the principal
> forum for asserting constitutional challenges to state convictions");  Wainwright v.
> Sykes, 433 U.S. 72 (1977) ("[T]he state trial on the merits [should be] the 'main
> event,' so to speak, rather than a 'tryout on the road' for what will later be the
> determinative federal habeas hearing"). . . .

Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1401 (2011).

Therefore, to the extent Petitioner is attempting to submit documents as part of his

habeas case which were available or could have been obtained but were not presented to the PCR

court, those documents have not been considered.  Documents submitted as part of Petitioner's

previous state court proceedings, however, whether at trial and/or in his APCR, have been considered.

Further, to the extent any such documents have handwritten notes or alterations made to the original

document, the undersigned has considered such as argument by a party, not as part of the document.

## II.

In Grounds One and Two of the Petition, Petitioner raises ineffective assistance of

counsel claims for 1) failure to investigate the medical and forensic evidence, which resulted in

counsel being unable to properly present expert evidence that would have established insufficient

evidence of guilt, and 2) failure to investigate the ballistic evidence in order to prove that the "bullet"



5

used by the State to convict Petitioner was actually non-existent. In Ground Three, Petitioner contends that the prosecutor used false, coerced, perjured statements, evidence (the gun specifically), and testimonies to convict Petitioner of murder. Although presented as a claim of prosecutorial misconduct, Respondent contends that Petitioner's Ground Three is actually a claim of ineffective assistance of counsel, and it has therefore been addressed herein as a claim that counsel failed to properly investigate and challenge such evidence.[4]

Respondent does not dispute for purposes of summary judgment that the ineffective assistance of counsel claims raised in Grounds One, Two, and Three of the Petition were raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition, and were exhausted pursuant to Petitioner's appeal of the PCR order to the State Court of Appeals. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Mills v. State of South Carolina, No. 09-CP-23-5809.

Specifically, the PCR judge found: 1) Petitioner stated that trial counsel had represented him on an armed robbery charge (which had gone to trial before the charge in the instant case); 2) Petitioner stated that there was a single meeting (30-45 minutes in length) with trial counsel regarding the murder charge and that they never discussed this charge during their preparations for

---

[4]Although Petitioner did not object to this characterization of his claim in his response, it is not clear from the supplement outlining Petitioner's claims that this was his original intention. However, since Respondent addressed the issue as an ineffective assistance of counsel claim on the merits, and any claim of prosecutorial misconduct would be procedurally barred (since that would have been a direct appeal issue), the Court has given Petitioner the benefit of assuming that he intended to raise this claim as one for ineffective assistance and addresses the merits of that claim. See Petition Supplement [Court Docket No. 1-3], p. 12; see also discussion (Section III), infra.



the armed robbery trial; 3) Petitioner stated that he and trial counsel never discussed trial strategy or reviewed the discovery materials; 4) Petitioner stated they discussed the people who would testify as State witnesses but did not go into specifics; 5) Petitioner stated that he told trial counsel to contact Sam Williams and Albert Couch; 6) Petitioner stated that trial counsel failed to conduct a reasonable investigation; 7) Petitioner stated trial counsel did not have a trial strategy; 8) Petitioner stated trial counsel did not properly cross-examine State witnesses; 9) Petitioner stated trial counsel should have retained an expert witness; 10) Petitioner said he did not request a continuance on the day of trial in order to have more meetings with trial counsel to prepare the case, because he just wanted the trial over with;

11) Jeff Hollifield testified as an expert in trace and glass evidence; 12) Hollifield admitted he did not examine the physical evidence in this case, but stated he reviewed the various photographs and reports generated for trial; 13) Hollifield stated it was impossible to determine if the window of the car was broken from the outside or the inside; 14) Hollifield stated he did not believe the bullet passed through glass and that stippling on the victim's arm indicated the window had been open; 15) Hollifield stated it was possible, however, that pulverized glass could have caused stippling; 16) Hollifield stated he believed the stippling in this case was gun shot residue because it appeared black in the photographs; 17) Hollifield stated it was his opinion that, based on the documents he reviewed, the victim was shot from inside the vehicle or from someone leaning into the vehicle;

18) Criminalist James Armstrong stated he was the State's expert who analyzed the evidence and the firearm in this case; 19) Armstrong stated that, based on the bullet jacket and fragments, it was unclear whether there was a single bullet or not; 20) Armstrong stated that if there



was more than one bullet, it would have come from the same gun because of the rifling characteristics; 21) Armstrong stated the fired bullet jacket was fired by the .357 Magnum provided by the lead investigator, Wes Smith;

22) Investigator Shawnee Peeples stated she was an investigator on this case; 23) Peeples stated the victim was in the trauma bay at Greenville Memorial Hospital when she arrived; 24) Peeples stated multiple doctors were there- including Drs. Foxworth and Young; 25) Peeples stated a bullet fragment was retrieved from the victim, secured, and given to her; 26) Peeples stated Dr. Foxworth gave her the bullet fragment; 27) Peeples stated that she never lost sight of the fragment between the time it was removed and when it was handed to her;

28) Dr. Michael Ward stated he is a forensic pathologist; 29) Ward stated he examined the victim's body, prepared a report, and testified at trial; 30) Ward stated the victim had tearing of the skin, pinpoint abrasions, black foreign material, and larger abrasions in the two (2) wound areas; 31) Ward stated the distance between the gun muzzle and the victim was less than two or three feet; 32) Ward stated there was no way to resolve whether the victim was turned either left or right when he was shot; 33) Ward stated that, while he testified at trial about recovering glass during the autopsy, he could not testify at this point about where the glass was recovered from; 34) Ward stated the stippling seen on the victim could have occurred if the shot came from outside the vehicle but the window was partially open at the time;

35) Dr. Elizabeth Foxworth stated she is a pediatric emergency physician at Greenville Memorial Hospital; 36) Foxworth stated she was in the emergency room when the victim arrived but did not believe she was in the trauma bay;

37) Dr. Thomas Young stated he is a surgeon at Greenville Memorial Hospital; 38)



Young stated that the victim suffered a gunshot wound; 39) Young stated he could not recall whether or not he removed any foreign objects from the victim; 40) Young stated he did not dictate a record of his involvement with the victim, and that this would have been done by a resident;

41) Assistant Solicitor Howard L. Steinberg testified that he was both the law enforcement advisor during the early investigation of the case and the prosecuting attorney at trial; 42) Steinberg testified he did not call the various doctors who treated the victim because there was a complete chain of custody; 43) Steinberg testified that, as the law enforcement advisor, he could have requested a gunshot residue test from any of the occupants of the car, but that there was no evidence the shot came from the driver's side of the car; 44) Steinberg testified no witnesses ever positively identified another person as the shooter;

45) trial counsel testified that he represented Petitioner on both an armed robbery charge and this murder charge; 46) counsel testified that he filed discovery motions, mailed a copy of the discovery materials to the Petitioner, and later reviewed those materials with him; 47) counsel testified this case was going to trial from the very start and that he hired an investigator; 48) counsel testified that he met with Petitioner numerous times to prepare this case for trial; 49) counsel testified the Petitioner also wanted to discuss this case while they were preparing for the armed robbery trial; 50) counsel stated the Petitioner asked him to contact an inmate at the detention center and Officer Williams (who worked at the detention center); 51) counsel stated his investigator met with Williams and counsel made a strategic decision not to call him as a witness at trial; 52) counsel stated he did not see any problems with chain of custody evidence in this case; 53) counsel stated that he did not believe that they needed an expert witness regarding trace and glass evidence in this case; 54) counsel stated that he also did not believe that they needed an expert after he reviewed the autopsy report; 55)



counsel stated the defense strategy was that Petitioner was innocent and that Reggie Henderson was the shooter; 56) counsel testified he attempted to argue third-party guilt, but the Petitioner would not testify that Henderson was guilty and Henderson asserted his Fifth Amendment right not to testify; 57) counsel testified that Petitioner's testimony did not help their case, but rather hurt it; 58) counsel testified he attempted to impeach the credibility of the State's witnesses through intensive cross-examination (though only one witness said the shooter did not look like the Petitioner); 59) counsel testified he especially attempted to thoroughly cross-examine the victim's family (who were in the car with him at the time of the shooting);

60) The PCR Court found Petitioner's testimony was not credible, while trial counsel's testimony was credible; 61) counsel adequately conferred with the Petitioner, conducted a proper investigation, and was thoroughly competent in his representation; 62) aside from the issue of a potential expert witness, Petitioner failed to articulate what more trial counsel should have done in his pre-trial investigation of the case; 63) counsel's testimony about his investigation and preparation was extremely credible; 64) Petitioner failed to meet his burden of proving trial counsel should have retained an expert witness to review the glass and trace evidence; 65) initially, Hollifield did not review any of the physical evidence, speak to any individuals who had been involved in the investigation of this case, or prepare a written report of his findings; 66) regardless, the Court did not agree with Petitioner's assertion that an expert witness such as Hollifield would have affected the outcome of his case; 67) the State's evidence pointed to the Petitioner shooting the victim while standing outside the passenger side of the car; 68) nothing in Hollifield's testimony conclusively proved otherwise; 69) while the Petitioner seemed to argue that the fatal shot was from inside the car, Hollifield testified such a scenario was merely a possibility - not that the shot could <u>not</u> have come



from outside the car; 70) counsel testified that there was nothing in the State's evidence that led him to believe an expert in trace evidence would have been necessary in this case; 71) trial counsel is an attorney experienced in the practice of criminal law - first as an assistant solicitor and now as a defense attorney; 72) counsel's testimony was compelling and the Court thus rejected the Petitioner's argument that, based on the information in the State's discovery materials, counsel should have recognized a potential issue and retained an expert to further review the trace evidence; 73) to the extent Petitioner raised an issue related to the chain of custody, he failed to meet his burden of proving trial counsel was ineffective; 74) Petitioner seemed to argue the trial testimony, PCR testimony, and records in this case indicated a discrepancy in the chain of custody of the bullet fragments; 75) Petitioner failed to establish a break in the chain of custody and that there was any reason for counsel to have challenged the chain of custody at the time of trial; 76) even assuming arguendo there was a potential deficiency in the chain of custody, it would not have rendered that evidence inadmissible; 77) Petitioner failed to meet his burden of proving trial counsel did not develop a proper trial strategy in this case; 78) counsel testified that his trial strategy was to (a) extensively cross-examine State witnesses and attack their credibility, (b) argue the Petitioner was innocent, and (c) make a third-party guilt argument that Reggie Henderson was the shooter; 79) trial counsel articulated a valid trial strategy for this case; 80) trial counsel aggressively cross-examined State witnesses and brought out issues related to their credibility; 81) trial counsel also decided to have the Petitioner testify in his own defense;

82) the Petitioner testified he was not the shooter in this case and refuted much of the testimony from eyewitnesses; 83) Petitioner testified Reggie Henderson was there that night with a gun and that he believed Henderson was shooter; 84) trial counsel's strategy was well-executed and



presented to the jury, who weighed all of the evidence and testimony in their deliberations; 85) it was clear that, regardless of the strong evidence put forth by trial counsel, the jury simply did not accept the Petitioner's version of events; 86) Petitioner failed to meet his burden of proving trial counsel failed to properly cross-examine the State's witnesses; 87) after an examination of the trial transcript, this allegation was without merit; 88) counsel thoroughly cross-examined the State's witnesses in this case and attempted to impeach their credibility; 89) in cross-examining the victim's parents and sisters (who were all in the car with him when he was killed), counsel pointed out inconsistencies in their statements to the police and their trial testimony; 90) in cross-examining two police officers, these witnesses stated the victim's father initially reported the shooting occurred at a Huddle House instead of the actual location; 91) counsel impeached the Petitioner's girlfriend with her first statement to police; 92) counsel questioned an eyewitness about a detail in his testimony that was not included in his statement; 93) counsel's cross-examination of the lead investigator led that witness to admit Reggie Henderson had recently also been charged with murder in this case; 94) counsel did an excellent job of attempting to attack the credibility of the State's witness; 95) Petitioner failed to show ineffective assistance of his counsel; 96) as to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in the Court's order, the Petitioner failed to present any evidence regarding such allegations; and 97) accordingly, Petitioner waived such allegations and failed to meet his burden of proof regarding them. (R.pp. 1071-1079).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir.



2000)(en banc), <u>cert</u>. <u>denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). <u>See</u> <u>also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000). <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. As noted by the Supreme Court, the

> AEDPA's standard is intentionally " ' "difficult to meet." ' " <u>White v. Woodall</u>, 572 U.S. ___, 134 S.Ct. 1697, 1702 (2014) (quoting <u>Metrish v. Lancaster</u>, 569 U.S. ___,

13



133 S.Ct. 1781, 1786 (2013)). We have explained that " 'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." White, 572 U.S., at ___, 134 S.Ct., at 1702 (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." Id., at ___, 134 S.Ct., at 1702 (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86 (2011).

Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24(2002) (per curiam). When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 13 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ___, 131 S.Ct. 1388, 1403 (2011)).

Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).

Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the



objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). As discussed hereinbelow, infra, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

      The trial record reflects that Dorothy Johnson, who was Petitioner's girlfriend at the time of the shooting, testified that she dropped Petitioner off around 7:30 p.m. on the night of the shooting and that he had her gun in his pants. (R.pp. 410-411). The victim was in a car with his stepfather, mother, and sister when his stepfather was trying to purchase drugs. (R.p. 186). The victim's mother and stepfather testified that the Petitioner was the man who shot the victim through the passenger side window. (R.pp. 196-201, 229-238). The victim's sister also testified that the shooter fired from the victim's side of the car. (R.pp. 263-266). Robert Kennedy and Andrew Zambelas testified that they also saw Petitioner on the passenger side of the car and that he fired into the car. (R.pp. 533-542, 548-551, 565-566). Petitioner called Johnson around 10:00 p.m. to come pick him up. (R.pp. 413-414). When she picked him up, Petitioner was acting fidgety and told her that he almost killed a white guy. (R.p. 414). Petitioner told her to go to his cousin's house and get his stuff. (R.p. 416). Johnson testified that when she went to his cousin's house and picked up his coat, she felt something heavy in the pocket. (R.pp. 416-417). She then took the gun out of his coat and put it in her pocketbook. (R.p. 417).



Valerie McDaniel, Petitioner's cousin, testified that after she heard the gunshot Petitioner busted into her apartment, and that Petitioner told her that he had shot somebody. (R.pp. 625-626). McDaniel testified that she later saw Johnson take the gun out of Petitioner's jacket. (R.p. 630). For his part, Petitioner gave two statements to police in which he denied shooting the victim and blamed Reggie Henderson. (R.pp. 663-680). Petitioner admitted to being present but testified that Henderson shot the victim with Henderson's gun. (R.pp. 759-760). Petitioner also testified that he did not have a gun on him that night. (R.p. 760). Firearms examiner and ballistics expert James Armstrong testified the fragment retrieved from the victim was fired by the gun recovered from serial number information from the gun in Johnson's car. (R.pp. 453-461, 684-685).

With respect to trial counsel's representation, Petitioner testified at his PCR hearing that he only met with his counsel one time about this case for about thirty to forty-five minutes before his trial. (R.pp. 960, 963). Petitioner testified that they did not discuss the State's evidence, and that his counsel never discussed any trial strategy or witnesses. (R.pp. 961, 963). Petitioner also testified that he told his counsel to talk to Officer Sammie Williams at the Greenwood Detention Center and to subpoena Albert Couch. (R.pp. 963-964). Petitioner testified that his counsel also represented him in an armed robbery case, but that counsel did not investigate that case either, and that he [Petitioner] did not say anything to the trial judge at the time because he just wanted to "get it over with." (R.pp. 967-968).

Hollifield testified at the PCR hearing that he did not review the physical evidence, but that he reviewed documents from work that was previously done, photographs of the crime scene, and the medical exam. (R.pp. 975-976, 991). Hollifield testified that it was not possible to determine if the glass window in the car was broken from the inside or outside, but that while he could not



determine if the victim was shot from someone inside or outside of the car, the bullet could not have passed through the glass window prior to entering the victim. (R.pp. 977-979). Hollifield also testified that he believed that the shot would have come from either inside the car or someone outside the car who was leaning in the window due to the victim's position in the car. (R.p. 987). However, although Hollifield testified on direct examination that he believed the fatal shot could not have come from outside the car because there was a large amount of gunpowder stippling on the victim's arm (indicated the bullet did not pass through glass), he admitted on cross-examination that pulverized glass could have caused the stippling. (R.pp. 979-980, 989).

Dr. Ward, the forensic pathologist in the case, testified at the PCR hearing that he believed the weapon was most likely fired from less than two (2) feet from the victim. (R.p. 1016). Ward testified that, while he testified at trial that he recovered glass during the autopsy, his report does not reflect where the glass was recovered from. (R.pp. 1020-1021). Ward also testified that the injuries and evidence in this case could have been caused by a shot fired through a partially open window. (R.pp. 1024-1025).

James Armstrong, the firearms examiner and expert from the trial, testified at the PCR hearing that the fired bullet jacket from the scene came from the .357 he received from Investigator Smith. (R.p. 999). Dr. Foxworth, a pediatric emergency room physician, testified that while she was in the emergency room that night, she did not believe she entered the trauma bay or retrieved evidence from the victim. (R.pp. 1027-1028). Dr. Thomas Young, a surgeon who treated the victim, testified that he did not recall removing anything from the victim, but had not dictated any notes from the event to refresh his recollection. However, he recalled clearly that the victim suffered from a gunshot wound. (R.pp. 1032-1033). However, Shawnee Peeples, the officer sent to the hospital after the



shooting, testified that her notes reflected Dr. Young removed an item from the victim's body and gave it to Dr. Foxworth, who gave it to her. She testified that she was present and never lost sight of the item and secured it in her vehicle as evidence. (R.pp. 1004-1005, 1007-1009).

Petitioner's trial counsel testified at the PCR hearing that he would have filed discovery motions in this case, mailed copies of the materials to the Petitioner, and took the materials with him when he went to see the Petitioner. Counsel testified that he reviewed the materials with the Petitioner and he recalled Petitioner being very thorough when he went through the materials. Counsel also testified that he and Petitioner had numerous discussions and meetings about both this case and an unrelated robbery case. (R.pp. 1034-1036). Counsel testified that the defense position was that Petitioner was innocent and that Reggie Henderson probably shot the victim. (R.pp. 1037-1038, 1049, 1051). Counsel testified that based upon his review of the discovery materials, that there was no need to challenge the chain of custody or hire independent experts to review either the autopsy report or trace evidence. (R.pp. 1038-1039).

As previously discussed, the PCR judge found that Petitioner was not credible while his counsel's testimony was credible. The PCR judge also found that counsel adequately conferred with the Petitioner, conducted a proper investigation, and was thoroughly competent in his representation. (R.p. 1075). The PCR court pointed out that the State's evidence pointed to the Petitioner shooting the victim while standing outside the passenger side of the car and that nothing in Hollifield's testimony conclusively proved otherwise. Further, although Petitioner presented other possibilities, Petitioner did not prove that the State's evidence of what occurred actually did not occur. (R.pp. 1075-1076). The PCR court noted that trial counsel is an attorney experienced in the practice of criminal law - first as an assistant solicitor and now as a defense attorney, and found his

18



testimony compelling.  (R.p. 1076).  Furthermore, the PCR court found that Petitioner failed to establish a break in the chain of custody or that there was any reason for counsel to have challenged the chain of custody at the time of trial,  and that even assuming arguendo there was a potential deficiency in the chain of custody, it would not have rendered that evidence inadmissible.  (R.p. 1076).

The PCR judge found that counsel articulated a valid trial strategy based on (a) extensively cross-examining State witnesses and attacking their credibility, (b) arguing the Petitioner was innocent, and (c) making a third-party guilt argument that Reggie Henderson was the shooter. He put Petitioner on the stand to testify he was not the shooter and to refute much of the testimony from eyewitnesses, and also to testify that Reggie Henderson was there that night with a gun and that he believed Henderson was the shooter.  The PCR court also found that trial counsel aggressively cross-examined State witnesses and brought out issues related to their credibility by 1) cross-examining the victim's parents and sisters (who were all in the car with him when he was killed) and pointing out inconsistencies in their statements to the police and their trial testimony; 2) cross-examining two police officers, who stated the victim's father initially reported the shooting occurred at a Huddle House instead of the actual location; 3) by impeaching Petitioner's girlfriend with her first statement to police; 4) by questioning an eyewitness about a detail in his testimony that was not included in his statement; and 5) by cross-examining the lead investigator, leading that witness to admit Reggie Henderson had recently also been charged with murder in this case. (R.p. 1076-1079).

Although Petitioner disagrees with his trial counsel's strategy with the benefit of hindsight, the strategy used by Petitioner's trial counsel gave the jury a way to believe Petitioner's version of the story.  However, as the PCR court held and pointed out,  it is clear that, regardless of



the strong evidence put forth by trial counsel, the jury simply did not accept the Petitioner's version of events. (R.pp. 1077-1078). Petitioner has not shown further investigation and/or the hiring of experts would have resulted in a different outcome in this case. Although Petitioner speculates that if counsel had hired experts, that would have affected the outcome of the case, this unsubstantiated offering is insufficient to show his counsel was ineffective.

While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. Id. at 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991), cert. denied, 505 U.S. 1230 (1992); Horne v. Peyton, 356 F.2d 631, 633 (4th Cir. 1966), cert. denied, 385 U.S. 863 (1966); Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir. 1989), cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.].

Therefore, Petitioner has not shown that the findings and rulings of the state courts were unreasonable, or that his counsel was ineffective. Evans, 220 F.3d at 312; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems', and not as a means of error correction"]. These claims should be dismissed.



## III.[5]

With respect to Ground Four of the Petition (Petitioner's due process claim), Respondent argues, and the undersigned agrees, that this issue is procedurally barred from consideration by this Court because it was not raised in either a direct appeal or as an ineffective assistance of counsel claim in Petitioner's PCR proceedings.[6] Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert, denied, 528 U.S. 959 (1999)"In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court.... That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.] (quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir.1995) (quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)).

---

[5]The findings in this section with regard to Ground Four would also apply to Ground Three if Petitioner has intended to pursue that issue as a direct appeal prosecutorial misconduct claim, rather than an ineffective assistance of counsel claim.

[6]If Petitioner wanted this issue considered and ruled on in a direct appeal, he should have pursued it as such and not dismissed his direct appeal. If he wanted this issue considered by the PCR court as an ineffective assistance claim and it was not, a motion for the PCR court to reconsider its order denying his APCR was necessary to have this issue considered if Petitioner wanted to assert or preserve this issue. Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000)[A "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order."] (citing Pruitt v. State, 423 S.E.2d 127, 128 n. 2 (S.C. 1992)[issue must be raised and ruled on by the PCR judge in order to be preserved for review]; Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007)["Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review . . . ."]; Humbert v. State, 548 S.E.2d 862, 865 (S.C. 2001); Plyler v. State, 424 S.E.2d 477, 478-480 (S.C. 1992)[issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review; see also Rule 59(e), SCRCP [providing avenue for any party to move to alter or amend a judgment if they believe necessary matters not addressed in original order]; Primus v. Padula, 555 F.Supp.2d 596, 611 (D.S.C. 2008); Smith v. Warden of Broad River Correctional Inst., No. 07-327, 2008 WL 906697 at * 1 n. 1 (D.S.C. Mar. 31, 2008); McCullough v. Bazzle, No. 06-1299, 2007 WL 949600 at * 3 (D.S.C. Mar. 27, 2007)(citing Al-Shabazz, 577 S.E.2d at 747); see also Marlar v. Warden, Tyger River Correctional Institution, 432 Fed.Appx. 182, 186-188 (4th Cir. May 25, 2011).



Because Petitioner did not properly raise and preserve this issue in his state court proceedings, it is barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because this issue was not *properly* pursued and exhausted by the Petitioner in state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316  (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).



> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

<u>Coleman</u>, 501 U.S. at 750.

   Petitioner has not presented any arguments to show cause for his procedural default of this claim. <u>See</u> <u>generally</u> <u>Memorandum in Opposition to Summary Judgment</u>. Therefore, as this issue was not preserved for federal habeas review; <u>Joseph</u>, 184 F.3d at 328; <u>Townes</u>, 68 F.3d at 846; <u>Mallory</u>, 27 F.3d at 995; and since Petitioner has failed to even present any argument as to cause, he has failed to cure the procedural default of this claim. <u>Rodriguez v. Young</u>, 906 F.2d 1153, 1159 (7th Cir. 1990), <u>cert.</u> <u>denied</u>, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

   Finally, to the extent Petitioner is arguing that he is actually innocent, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>see</u> <u>also</u> <u>Doe v. Menefee</u>, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges to which he was found guilty. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; <u>Doe</u>, 391 F.3d at 161 (quoting <u>Schlup</u> for the evidentiary standard required for a court to consider an actual



innocence claim).  Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if this claim is not considered.  <u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995). Therefore, this claim is procedurally barred from consideration by this Court.

<u>**Conclusion**</u>

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

\

_____
Bristow Marchant
United States Magistrate Judge

April 30, 2015
Charleston, South Carolina



24

**Notice of Right to File Objections to Report and Recommendation**


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



25